## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEREK MORTLAND,**

        **Plaintiff,**      :

    v.                                   **Case No. 2:19-cv-3361**
                                                **Judge Sarah D. Morrison**
                                              **Magistrate Judge Kimberly A.**
                                              **Jolson**

**THE OHIO STATE UNIVERSITY,**    :

        **Defendant.**

## <u>OPINION AND ORDER</u>

This matter arises out of a dispute between Derek Mortland and The Ohio State University over the accessibility of OSU's Wexner Medical Center East Hospital and is before the Court on three motions.

First, OSU moved for summary judgment on Mr. Mortland's claims for punitive damages. (ECF No. 47.) In response, Mr. Mortland withdrew his claims for punitive damages. (ECF No. 50.) Defendant's Partial Motion for Summary Judgment is, therefore, **GRANTED**.

Second, Mr. Mortland filed a Motion for Summary Judgment (ECF No. 49), to which OSU responded (ECF No. 53), and Mr. Mortland replied (ECF No. 56). For the reasons that follow, Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

Third, Mr. Mortland filed a Motion to Exclude Evidence (ECF No. 55), to which OSU responded (ECF No. 57), and Mr. Mortland replied (ECF No. 58). For the reasons set forth below, Plaintiff's Motion to Exclude Evidence is **GRANTED**.

## I.     BACKGROUND

As the result of spinal cord injuries originally received during a motorcycle accident, Mr. Mortland is unable to walk and uses a wheelchair to aid in his mobility. (Mortland Affidavit, ECF No. 49-2, PAGEID # 995.) To receive treatment related to his disability, Mr. Mortland is currently a patient at the East Hospital. (*Id.*) Mr. Mortland became a patient at East Hospital in 2019 and has visited the hospital on at least eight occasions. (Mortland Medical Records, ECF No. 49-3.)

At each visit, Mr. Mortland encountered physical barriers in the following areas of East Hospital: the main parking lot and entrance, the first-floor lobby, gift shop, restrooms, and cafeteria, and several areas of the second and ninth floor. According to Mr. Mortland, these barriers forced him to exert himself in abnormal and painful ways to gain access to the facility, attend his appointments, and use hospital amenities. (Mortland Affidavit, ECF No. 49-2, PAGEID # 997.) Despite these barriers, he plans to return to the hospital to continue receiving medical care. (Mortland Affidavit, ECF No. 49-2, PAGEID # 998.)

On August 3, 2019, Mr. Mortland filed suit against OSU under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (Compl., ECF No. 1.) During discovery in this case, Mr. Mortland identified that several areas of East Hospital were not in compliance with various federal accessibility regulations. (Mortland Site Access Evaluation, ECF No. 49-9.) OSU hired Jeff

Mogyoros to conduct a site evaluation of East Hospital during the same period—that evaluation confirmed 90% of the violations identified by Mr. Mortland. (OSU Expert Comparison Chart, ECF No. 53-4; Gonzalez Affidavit, ECF No. 53-1; *see also* Mortland Expert Comparison Chart, ECF No. 49-14.)

Pursuant to this Court's scheduling order (ECF No. 38), OSU's expert disclosures were due by December 6, 2021. Aware that it would not meet the deadline, OSU obtained an informal extension until December 27, 2021, from Mr. Mortland. (Attorney Emails, ECF No. 55-4.) Ultimately, OSU did not disclose Mr. Mogyoros's expert report until January 5, 2022. (Resp., ECF No. 57, PAGEID # 2136.) The report was unsigned and unaccompanied by information about Mr. Mogyoros's qualifications, compensation, or history of expert testimony. According to OSU, it attempted to obtain that information from Mr. Mogyoros on March 11, 2022 (more than three months after the disclosure deadline), but was unable to contact him. (*Id.*) Several days later, OSU was informed that Mr. Mogyoros was no longer employed by LCM Architects. (*Id.*) In lieu of materials from Mr. Mogyoros, OSU obtained an affidavit from his former supervisor, Kate Gonzalez, identifying Mr. Mogyoros as the author of the report and attesting to its accuracy. (*Id.*; Gonzalez Affidavit, ECF No. 53-1.) OSU also obtained a copy of her curriculum vitae to demonstrate her qualifications to make such an attestation. (Gonzalez CV, ECF No. 53-2.) This information from Ms. Gonzalez, along with a chart summarizing Mr. Mogyoros's report and comparing it to Mr. Mortland's report, were disclosed for the

first time on March 25, 2022, in response to Mr. Mortland's motion for summary judgment.

Mr. Mortland now seeks to exclude OSU's expert evidence and moves for summary judgment based on his own expert report.

## II. MOTION TO EXCLUDE EVIDENCE

Mr. Mortland seeks to exclude Mr. Mogyoros as an expert witness pursuant to Rule 37(c) for failure to comply with Rule 26(a)(2).[1]

Rule 37(c) provides a "self-executing sanction" when a party fails to comply with the expert disclosure requirements outlined in Rule 26(a), it precludes the party from using the "information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As the party seeking to avoid the Rule 37(c) sanction, OSU has the burden of showing that its failure to comply with the expert disclosure requirements in Rule 26(a)(1) was either substantially justified or harmless. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

OSU does not dispute that its expert disclosure did not comply with Rule 26(a)(2). Instead, it argues that its noncompliant expert disclosure is exempt from

---

[1] Mr. Mortland also seeks to exclude Ms. Gonzalez as an expert witness. In response to his motion for summary judgment, OSU attached an affidavit from Ms. Gonzalez attesting to the accuracy of Mr. Mogyoros's report and OSU included her CV as proof of her qualifications to do so. In this regard, the Court agrees with Mr. Mortland's contention that OSU relied on Ms. Gonzalez as an expert witness because she has, in effect, adopted Mr. Mogyoros's findings as her own. Nonetheless, to the extent that OSU sought to use Ms. Gonzalez as an expert on summary judgment or at trial, it withdrew that decision in response to Mr. Mortland's motion. (ECF No. 57, PAGEID # 2136.) Accordingly, Mr. Mortland's motion to exclude Ms. Gonzalez as an expert witness is **GRANTED**.

4

Rule 37(c)'s automatic sanction because it was harmless and substantially justified. In the alternative, OSU argues that the wholesale exclusion of Mr. Mogyoros as an expert witness is not an appropriate sanction.

### A. OSU did not comply with a court order and still has not disclosed information required by Rule 26(a).

Rule 26(a)(2) requires the disclosure of any expert witness a party seeks to use at trial. Fed. R. Civ. P. 26(a)(2)(A). The expert disclosure must be accompanied by a written report that is signed by the expert witness and includes:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi). Where, as here, there is a court order establishing the disclosure deadline, a party must disclose a complete expert report by that date or seek an extension from the Court—informal agreements between parties are not sufficient. Fed. R. Civ. P. 26(a)(2)(D).

OSU's expert disclosure in no way complied (and still does not comply) with Rule 26(a)(2) or this Court's scheduling order. From the start, OSU's disclosure of Mr. Mogyoros's expert report was untimely and incomplete. OSU did not disclose a written report by the court-imposed deadline of December 6, 2021—this alone is sufficient to trigger Rule 37's automatic sanction. Aware that it did not have the information necessary to comply with a court order or the federal rules, OSU failed

5

to file for an extension to the disclosure deadline and, instead, opted for an extrajudicial workaround by obtaining Mr. Mortland's consent for it to violate the scheduling order. Even then, OSU failed to meet the informal deadline it established with Mr. Mortland.

When OSU eventually disclosed a written report, the report was unsigned and did not include Mr. Mogyoros's expert qualifications, a statement of his compensation, a history of his expert testimony, or any summary charts. Although OSU disclosed some missing elements in dribs and drabs over the next few months, the report remains unsigned and incomplete as of the issuance of this Opinion and Order.

## B. OSU's noncompliant expert disclosure was neither harmless nor substantially justified.

In general, harmlessness "involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance ex rel. Mammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *5 (6th Cir. 1999). "An honest mistake is one that would not indicate bad faith or an attempt to conceal information, which would include a genuine misinterpretation or misunderstanding of a rule or order." *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 656 (E.D. Ky. 2013) (citation omitted). In order to assess whether a party's noncompliant disclosure was harmless or substantially justified, the Court considers five factors:

(1) Surprise to the party against whom the evidence would be offered;
(2) Ability of that party to cure the surprise;
(3) Extent to which allowing the evidence would disrupt the trial;
(4) Importance of the evidence; and
(5) Non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

OSU argues that its noncompliant expert disclosure was harmless and substantially justified because the untimely disclosure of Mr. Mogyoros's incomplete expert report was the result of an honest mistake and the remaining "technical errors" in the report are easily fixed and not harmful to Mr. Mortland. (ECF No. 57, PAGEID # 2137.) Mr. Mortland argues that OSU has not met its burden and, instead, OSU's enduring failure to comply with expert disclosure requirements is inexcusable and has placed him at disadvantage in preparing his case. (ECF No. 55-6, PAGEID # 2121.)

### 1. Surprise—OSU's untimely and incomplete expert disclosure resulted in unfair surprise to Mr. Mortland.

OSU seeks to minimize the unfair surprise to Mr. Mortland by emphasizing that he was aware OSU had hired Mr. Mogyoros and consented to the late disclosure of his report. (PAGEID # 2138–39.) While this may address Mr. Mortland's surprise as to the timing of OSU's initial partial disclosure, it does not address the fact that its expert report remains incomplete.

Despite OSU's effort to frame the deficiencies in the expert report as "technical errors," they are anything but—"[i]nformation regarding an expert's qualifications, including his publications and prior testimony, is essential for an opponent to prepare for cross-examination either at a deposition or trial." *Storrs v. Univ. of Cincinnati*, No. 1:15-CV-136, 2018 WL 684759, at *9 (S.D. Ohio Feb. 2, 2018) (Black, J.) (collecting cases). Even today, there is no indication that OSU obtained or disclosed Mr. Mogyoros's qualifications as an expert, his compensation,

or his history testifying as an expert witness. What is more, the report remains unsigned and the only evidence attesting to the fact that Mr. Mogyoros authored the report is Ms. Gonzalez's affidavit, which was disclosed in response to Mr. Mortland's motion for summary judgment.

As such, OSU's noncompliant expert disclosure has significantly hindered Mr. Mortland's ability to prepare his case. Even if OSU were to remedy these deficiencies now, it would result in unfair surprise to Mr. Mortland given the late stage of the litigation. This factor favors exclusion.

### 2. Ability to Cure—Mr. Mortland is limited in his ability to cure the surprise.

As an initial matter, the Court does not take kindly to OSU's argument that Mr. Mortland could have cured any surprise by requesting information about Mr. Mogyoros or seeking an extension of discovery to depose him. (ECF No. 57, PAGEID # 2137–38.) It is OSU's duty to disclose a complete expert report under Rule 26(a)— Mr. Mortland has no duty to request or obtain this information through other means.

Given that OSU's initial partial expert disclosure occurred the day after the close of discovery, Mr. Mortland did not have the opportunity to cure the surprise without seeking to reopen discovery. Even so, this solution would require "the non-defaulting party, to bear the effort and expense necessary to cure [OSU's] failure to disclose. This would arguably reward [OSU] for its untimeliness and [do] nothing to deter similar conduct from future litigants." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019).

8

Moreover, the fact that Mr. Mortland is yet to receive a complete expert report from OSU places him at a continuing disadvantage in preparing his case. As such, he is limited in his ability to cure the surprise from OSU's incomplete expert disclosure. This factor favors exclusion.

### 3. Disruption to Trial—Allowing OSU's expert evidence would disrupt the case schedule.

Although a trial date has not been set, this case is over three years old and allowing the evidence in could significantly disrupt the case schedule. This factor also favors exclusion.

### 4. Importance of the Evidence—OSU's expert evidence is not important to resolving a material issue.

When weighing the importance of the evidence, the Sixth Circuit generally focuses on whether the evidence is essential to resolving a material issue in the case. *See Howe*, 801 F.3d at 749; *EQT Prod.*, at 469. Exclusion is disfavored when evidence is crucial to an accurate resolution of the case. Here, the findings in OSU's expert report are very similar to those in Mr. Mortland's own report. As a result, OSU expert evidence is not crucial to accurately resolving the issue of whether East Hospital was accessible. This factor is neutral on exclusion.

### 5. Explanation for Failure—OSU's explanation for its noncompliant expert disclosure is unreasonable.

OSU has not met its burden in providing a reasonable explanation for its noncompliant expert disclosure.

Even if the Court were to accept OSU's explanation that it did not know it needed the Court's permission to extend a court-imposed deadline, this explanation

9

does not account for OSU's other failures. The discovery period for this case spanned nearly two years; OSU had ample opportunity to identify a qualified expert and obtain all of the evidence required by Rule 26(a)(2)(B). OSU's failure to make timely and complete disclosure of Mr. Mogyoros is explained only by its own lack of diligence—not an honest mistake or factors beyond its control.

Next, OSU's explanation that it was not able to contact Mr. Mogyoros because he was no longer employed by LCM architects is equally unpersuasive. Mr. Mogyoros remained with his employer until March 15, 2022. (Resp., ECF No. 57, PAGEID # 2136.) Thus, his departure from LCM architects would not have impacted OSU's ability to contact him had it attempted to do so in a timely manner.

Finally, OSU has offered no explanation for why it still has not provided Mr. Mortland with a signed expert report or disclosed information about Mr. Mogyoros's qualifications, compensation, or history testifying as an expert.

This factor weighs strongly in favor of exclusion.

On balance, the *Howe* factors favor exclusion and reveal that OSU's noncompliant expert disclosure was neither harmless nor substantially justified. Rather than resulting from a genuine misinterpretation or misunderstanding of this Court's scheduling order or the requirements of Rule 26(a), OSU's failure to make a timely and complete expert disclosure resulted from a complete disregard of the same.

### C. An alternative sanction is not appropriate.

OSU contends that the wholesale exclusion of Mr. Mogyoros's testimony is inappropriate. (PAGEID # 2139.)

10

The Court has the discretion to order an alternative sanction under Rule 37(c). "Although exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a) or (e), Rule 37(c) provides the district court with the option to order alternative sanctions 'instead of exclusion of the late or undisclosed evidence on motion and after giving an opportunity to be heard.'" *Howe*, at 747. *See also Roberts*, 325 F.3d at 783–84 ("Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety.") The Advisory Committee Notes to the 1993 Amendments, which discuss Rule 37(c)'s automatic sanction, explain that:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a *pro se* litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

Fed. R. Civ. P. 37(c), 1993 Advisory Committee Note; *see also Howe*, at 747.

OSU's failure to comply with disclosure requirements does not resemble any of those situations and is readily distinguishable from the cases it cites in support of its argument against exclusion. Each of those cases involved inadvertent nondisclosures. OSU's failure was not inadvertent—it could not have inadvertently failed to disclose evidence that it did not (and still does not) possess. The Court will not order an alternative sanction.

Accordingly, Mr. Mogyoros's Site Access Report (ECF No. 53-3), OSU's expert comparison chart (ECF No. 53-4), Ms. Gonzalez's affidavit (ECF No. 53-1), and her

curriculum vitae (ECF No. 53-2) are excluded pursuant to the automatic sanction in Rule 37(c). Likewise, Mr. Mogyoros and Ms. Gonzalez are excluded as expert witnesses at trial. Mr. Mortland's motion to exclude evidence is **GRANTED**.

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that

summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

**B.  Analysis**

Mr. Mortland argues that he is entitled to summary judgment on Count I (violation of Title II of the Americans with Disabilities Act, 42 U.S.C § 12132) and Count II (violation of § 504 of the Rehabilitation Act, 29 U.S.C. §794(a)) based on the "185 discrete violations" of federal accessibility regulations at OSU's East Hospital. (Compl., ECF No. 1, PAGEID # 10–14; Memo in Supp. of Mot., ECF No. 49-1.) Mr. Mortland first argues that OSU violated the ADA and Rehabilitation Act by failing adopt reasonable accommodations through the removal of architectural barriers at East Hospital. (ECF No. 56, PAGEID # 2128–31.) Based on these violations, Mr. Mortland argues that he is entitled to injunctive relief and that OSU is liable to him for compensatory damages because it was deliberately indifferent in removing barriers to access. (ECF No. 49-1, PAGEID # 989–92.) Finally, if he is granted either form of relief, Mr. Mortland argues that he is the prevailing party and, as such, is entitled to recovery of attorney fees and other litigation expenses. (*Id.* at PAGEID # 992–93.)

In response, OSU argues that there remains genuine issues of material fact as to whether East Hospital was inaccessible and whether it acted with deliberate indifference. (ECF No. 53, PAGEID # 1916–23.) OSU does not address Mr. Mortland's arguments for injunctive relief or his status as the prevailing party.

1.    **Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act.**

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of their disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Given that both statutes contain similar language, purpose, and scope, the Sixth Circuit applies the same analysis to claims brought under the ADA and Rehabilitation Act. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 905 (6th Cir. 2004).

As a governmental unit of the State of Ohio and a recipient of federal funding, OSU is a public entity under the ADA and a covered entity under the Rehabilitation Act. To establish a *prima face* case under either act, Mr. Mortland must demonstrate that he (i) has a disability, (ii) is otherwise qualified, and (iii) is being excluded from or denied the benefits of a public program or service. *Reinhart v. City of Birmingham*, No. 22-11074, 2022 WL 4542077, at *6 (E.D. Mich. Sept. 28, 2022). Only the third element is at issue here.

***Exclusion from Public Program or Service***. "Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as

outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (citing 42 U.S.C. § 12131(2)); *Ability Ctr.*, at 907 (Title II "requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide.") To that end, the Attorney General has adopted several architectural and design standards to ensure that the facilities and services of public entities are "readily accessible and usable by individuals with disabilities." 28 C.F.R. §§ 35.150 (existing facilities) & 35.151 (newly constructed and altered facilities). However, the Sixth Circuit has clarified that "[f]acility accessibility is not, standing alone, a cognizable claim under Title II's private right of action," instead, a plaintiff must also demonstrate that the "facility's inaccessibility interferes with [his] access to public services, programs, or activities." *Babcock v. Michigan*, 812 F.3d 531, 536 (6th Cir. 2016).

Thus, to succeed on his claim, Mr. Mortland must establish (1) that East Hospital is not readily accessible and (2) that its inaccessibility interfered with his access the hospital's services, program, or activities.

***Facility Accessibility***. Mr. Mortland argues that there is no issue of material fact as to whether East Hospital was inaccessible based on his unrebutted expert report which found 185 instances of noncompliance with the 2010 Standards, 1992 standards, and UFAS at the East Hospital facility. Given that Mr. Mortland's

15

expert evidence is unrebutted, there is no genuine issue of fact that the areas identified in his report do not comply with the appropriate architectural standards.

For example, of the 185 discrete violations found by Mr. Mortland, 135 are in the facility's accessible parking lot. (Mortland Site Access Evaluation, ECF No. 49-9, findings 1–135.) To comply with 2010 Standards, East Hospital must have at least 39 accessible parking stalls. (*Id.* at PAGEID # 1367 (citing 2010 ADAS Section 208.2.1).) According to Mr. Mortland's inspection, all but two of the inspected accessible stalls had noncompliant features, including steep slants and missing signage. (*Id.* at PAGEID # 1075–1367 (violations found at all stalls except 8th and 10th stall from east side of first row).) Mr. Mortland did not inspect 17 accessible parking stalls in a nearby lot or the accessible stalls in the tower main lot. (*Id.* at PAGEID # 1364–71.) However, even if every uninspected stall were ADA compliant, East Hospital would still only offer roughly half of the required number of accessible parking stalls. Mr. Mortland included a cost estimate of approximately $160,000 to bring the East Facility into compliance with 2010 Standards—$140,000 of which would repair inaccessible parking and entrance areas, (Cost Analysis, ECF No. 49-10), and OSU does not dispute the feasibility of adopting these modifications.

***Interference with Access to East Hospital's Services***. The services, programs, or activities of a public entity "encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). East Hospital's services include, among other things, the provision of medical care.

Mr. Mortland provides unrebutted evidence that the architectural barriers at East Hospital interfered with his access to its services, programs, and features. Mr. Mortland testified that the inaccessible features of the hospital's parking lot forced him to park over a block away and that traveling the extra distance was straining and exacerbated his pre-existing conditions. (Mortland Affidavit, ECF No. 49-2, PAGEID # 996–97.) Once at the hospital, the inaccessible features of the main entrance, first-floor lobby, giftshop, and cafeteria, and areas of the second and ninth floors required that he exert himself in awkward and painful ways to attend his doctor's appointments and use hospital amenities. (*Id.*). He also provides evidence of architectural barriers in each of those areas.

Most significant is his evidence that, as a whole, East Hospital's accessible parking falls woefully short of regulatory requirements. Even when viewed from the program-wide perspective, there is no evidence that East Hospital offers equivalent access to individuals with mobility-based disabilities who are prevented from obtaining medical services at the facility due the lack of accessible parking and other physical barriers.

OSU's argument that Mr. Mortland has successfully gained accessed the facility to attend medical appointments is insufficient to create a genuine dispute of fact. (ECF No. 53, PAGEID # 1920.) That a public service is not readily accessible does not require proof that architectural barriers are entirely unnavigable by individuals with disabilities. *See* 28 C.F.R. § 35.150. *See also Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir.2001). Instead, OSU's failure to provide equivalent

17

access—meaning access to the hospital's services that does not force Mr. Mortland to exert himself in abnormal or painful ways—is dispositive.

Accordingly, there is no genuine issue of fact that East Hospital is inaccessible as measured by the applicable architectural standards and that the hospital's inaccessibility interfered with Mr. Mortland's reasonable access to the services, programs, and activities therein.

As such, Mr. Mortland's motion for summary judgment is **GRANTED** as to OSU's liability on both counts.

### 2. Mr. Mortland is entitled to injunctive relief.

Once a party has demonstrated actual success on the merits, the Court considers three factors to determine if injunctive relief is appropriate: "(1) the threat of irreparable harm to the movant; (2) the harm to be suffered by the nonmoving party if the injunction is granted; and (3) the public interest at stake." *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987)). All three factors support granting an injunction here.

Mr. Mortland has presented unrebutted evidence that East Hospital is inaccessible to him and other individuals with mobility-based disabilities—this harm will continue in the absence of mandatory injunctive relief. Next, OSU presents no evidence that the modifications to East Hospital requested by Mr. Mortland are infeasible or will otherwise harm it. Finally, the public interest

strongly favors mandating accessibility of East Hospital's programs, services, and activities.

Mr. Mortland is **ORDERED** to file a proposed order granting injunctive relief within **twenty-one days of the date** of this Opinion and Order.

### 3. Mr. Mortland is the prevailing party.

Because Mr. Mortland has succeeded on the merits of his claim and demonstrated that he is entitled to injunctive relief, he is the prevailing party. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–04 (2001). As such, the Court grants to Mr. Mortland recovery of reasonable attorney's fees, including other litigation expenses, and costs. 42 U.S.C.A. § 12205 (West); *see also Shumway v. Devashree Inv. Inc.*, No. 3:20-CV-2768, 2021 WL 1578078, at *2 (N.D. Ohio Apr. 22, 2021) (a prevailing plaintiff may recover expert fees as part of the litigation expenses) (collecting cases).

### 4. There exists a genuine issue of fact as to whether Mr. Mortland is entitled to compensatory damages.

It is well settled that compensatory damages are available under the ADA and Rehabilitation Act, *Johnson,* 151 F.3d at 572–73 (ADA); *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782 (6th Cir.1996) (Rehabilitation Act), and evidence of intentional discrimination is necessary to obtain them. *Davis v. Flexman*, 109 F. Supp. 2d 776, 790 (S.D. Ohio 1999) (Rice, C.J.); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 264 (3d Cir. 2013); *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1152–53

(10th Cir. 1999); *see also Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 & n.2 (6th Cir. 2008) (assuming without deciding).

Although the Sixth Circuit has not conclusively ruled on the matter, it has consistently assumed that a showing of deliberate indifference is sufficient to prove discriminatory intent and has applied the following standard:

> The deliberate-indifference standard requires both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. As other circuits have recognized, the requisite knowledge is shown when the plaintiff has alerted the public entity to his need for accommodation. Consequently, although a showing of heightened negligence does not suffice to prove deliberate indifference, it is enough that a plaintiff has given the public entity the information necessary to understand the need for and reasonableness of the requested accommodation.

*Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *8 (6th Cir. Aug. 3, 2022) (internal quotations and citation omitted); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty., Ky.*, 637 F. App'x 922, 925 (6th Cir. 2016) (a party acts with deliberate indifference if it disregards a "known or obvious consequence" of its actions, namely that its actions will violate the plaintiff's federally protected rights).

To prove deliberate indifference, Mr. Mortland points to three separate lawsuits that he filed against OSU based on similar architectural barriers that existed at its other medical facilities. (2006 Complaint, ECF No. 49-4; 2015 Complaint, ECF No. 49-5; 2018 Complaint, ECF No. 49-6.) However, a general awareness that architectural barriers may exist at one of OSU's many facilities is not sufficient to establish deliberate indifference. *See Douglas*, at *8 ("A showing of heightened negligence does not suffice."); *see also Loeffler v. Staten Island Univ.*

20

*Hosp.,* 582 F.3d 268, 276 (2d Cir. 2009) ("[D]eliberate indifference must be a deliberate choice rather than negligence or bureaucratic inaction.") (internal quotations and citations omitted). Instead, OSU must have had information necessary to understand the need for and reasonableness of Mr. Mortland's requested accommodations at East Hospital.

Accordingly, there remains a genuine issue of fact whether OSU acted with deliberate indifference in failing to remove architectural barriers at East Hospital. As such, Mr. Mortland's motion for summary judgment is **DENIED** as to the availability of compensatory damages.

## IV.    CONCLUSION

For the reasons stated herein, Defendant's Partial Motion for Summary Judgment is **GRANTED**. (ECF No. 47.) Plaintiff's Motion to Exclude Evidence is **GRANTED**. (ECF No. 55.) Plaintiff's Motion for Summary Judgment is **DENIED** as to the availability of compensatory damages and **GRANTED** as to OSU's liability and Mr. Mortland's request for injunctive relief, attorney's fees, and other litigation expenses. (ECF No. 49.) Mr. Mortland is **ORDERED** to file a proposed order granting injunctive relief within **twenty-one days of the date** of this Opinion and Order.

The Court will schedule a trial on Mr. Mortland's request for compensatory damages in a separate order and will defer the issue of his reasonable attorney fees, litigation expenses, and costs to be awarded until resolution of the issue of compensatory damages.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**